**EASTMAN CHEMICAL CO.**

v.

**NIRO, INC.**

No. CIV. A. G–99–623.

United States District Court,
S.D. Texas,
Galveston Division.

Jan. 24, 2000.

Brian L. Bunt, Bunt & Wright, Longview, TX, for Eastman Chemical Company, plaintiffs.

Finis E. Cowan, III, Mills, Shirley, Eckel & Bassett, Houston, TX, Jack C Brock, Mills Shirley et al., Galveston, TX, for Niro, Inc., defendants.

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

KENT, District Judge.

Eastman purchased a spray fluidizer dryer from Niro, intending to use the dryer in an attempt to increase its potassium sorbate production capability. Eastman alleges that the dryer failed to perform according to contract specifications, and has brought suit against Niro alleging breach of contract, breach of warranty, fraudulent inducement, fraud subsequent to the formation of contract, and negligent misrepresentation. Eastman seeks the customary damages, including consequential and incidental damages arising from Niro's alleged breach of contract and breach of warranty.

Now before the Court is Niro's Partial Motion to Dismiss, filed December 10, 1999. Niro argues that a) Eastman's negligent misrepresentation claim should be dismissed as untimely under the applicable

two year statute of limitations, b) Eastman's fraud subsequent to the formation of contract claim should be dismissed pursuant to Texas' independent injury doctrine, and c) Eastman's claims for consequential and incidental damages for breach of contract and warranty are barred because Eastman waived the right to recover such damages in the contract governing the purchase of the sorbates dryer. For reasons more fully explained below, Eastman's negligent misrepresentation claims are **DISMISSED WITH PREJUDICE**; Niro's Motion to Dismiss the fraud subsequent to contract formation claims is **DENIED**; and Niro's Motion to Dismiss Eastman's claims for consequential and incidental damages arising from breach of contract and breach of warranty is **GRANTED**.

## I. FACTUAL SUMMARY

Plaintiff Eastman is a producer of potassium sorbate, a food preservative. Seeking to increase its production capability in order to remain competitive in the international marketplace, in 1995 Eastman entered into negotiations with Defendant Niro concerning the design and construction of a spray fluidizer dryer. Niro was to design, build and install a dryer which conformed to Eastman's product output specifications.

During the spring and summer of 1995, Niro's engineers worked on the design of the dryer, ultimately producing a design proposal which was satisfactory to Eastman. A purchase order contract (the "Contract") was confirmed in October 1995, with the final purchase price of the dryer set at $1,847,300.

Niro began installing the dryer at Eastman's Chocolate Bayou plant in June 1996. Installation was considered complete by Niro in September of that year.

Eastman alleges that from the beginning the dryer failed to conform to the production capability requirements specified in the Contract. Niro repeatedly visited Eastman's facilities in an effort to get the dryer to operate at the desired output rate. Moreover, Niro allegedly represented to Eastman that if various modifications were made to the dryer, it would then be capable of performing at the requisite rate. Eastman made these modifications, at considerable expense, yet the dryer allegedly never did perform at the promised rate.

In May of 1997, Eastman ceased further attempts to modify the dryer. Niro's personnel stopped working on the machine and left the premises. On October 8, 1999 Eastman filed the present lawsuit, seeking damages for breach of contract, breach of warranty, fraudulent inducement, fraud subsequent to the formation of contract, and negligent misrepresentation.

## II. ANALYTICAL STANDARD

Now before the Court is Niro's December 10, 1999 Motion to Dismiss, made pursuant to Fed. R. Civ. 12(b)(6). Niro targets only Eastman's claims for negligent misrepresentation, fraud subsequent to the formation of contract, and claims for incidental and consequential damages arising from the alleged breach of contract and breach of warranty. The Court will address these three claims in turn.

When considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the Court accepts as true all well-pleaded allegations in the complaint, and views them in a light most favorable to the plaintiff. *See Malina v. Gonzales,* 994 F.2d 1121, 1125 (5th Cir.1993). "However, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Fernandez–Montes v. Allied Pilots Ass'n,* 987 F.2d 278, 284 (5th Cir.1993).

Unlike a motion for summary judgment, a motion to dismiss should be granted only when it appears without a doubt that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Home Capital Collateral Inc. v. FDIC,* 96 F.3d 760, 764 (5th Cir.1996); *Tuchman v. DSC Communications Corp.,* 14 F.3d 1061, 1067 (5th Cir.1994). The

United States Court of Appeals for the Fifth Circuit has noted that dismissal for failure to state a claim is disfavored and will be appropriate only in rare circumstances. *Mahone v. Addicks Util. Dist. Of Harris County*, 836 F.2d 921, 926 (5th Cir.1988).

Finally, because Plaintiff attached a copy of the Contract to its Original Complaint, it is appropriate for the Court to consider the Contract when assessing Niro's Motion to Dismiss. *See* Fed. R.Civ.P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *see also Neville v. American Republic Ins. Co.*, 912 F.2d 813, 814 n. 1 (5th Cir.1990); *Sheppard v. Texas Dept. of Transp.*, 158 F.R.D. 592, 595 (E.D.Tex.1994).

## III. NEGLIGENT MISREPRESENTATION

■ Because original subject matter jurisdiction over this action is founded on diversity of citizenship, the Court must apply Texas law, including Texas' choice of law provisions. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Perez v. Lockheed Corp.*, 81 F.3d 570, 576 (5th Cir. 1996).

■ Texas applies the "substantive relationship test" to determine which state's law will apply to a tort claim governed by state law in a diversity action. *See Gutierrez v. Collins*, 583 S.W.2d 312, 318 (Tex.1979)("Having considered all the theories, it is the holding of this court that in the future all conflicts cases sounding in tort will be governed by the "most significant relationship test" as enunciated in Sections 6 and 145 of the Restatement (Second) of Conflicts."); *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex.1984)(following *Gutierrez* and applying most significant relationship test); *Perez*, 81 F.3d at 576–77 (recognizing deci-

sion in *Gutierrez* ); *LeBoeuf v. Planet Ins. Co.*, 913 F.Supp. 509, 511 n. 1 (S.D.Tex. 1996)(Kent, J.)("Under Texas law, the law of the state with the most significant relationship to the particular substantive issue in question governs its resolution.").

■ The substantive relationships in this case include the fact that Eastman's plant is located in Texas, that Niro's machinery was installed in a Texas plant, that the alleged misrepresentations giving rise to the claim occurred largely in Texas, and that Eastman would have felt the effects of any harm from Niro's alleged tort within Texas. The Court concludes that the substantive relationship test points to the application of Texas tort law.[1]

■ Under Texas law, there is a two year statute of limitations for negligent misrepresentations. *See* Tex. Civ. Prac. & Rem.Code Ann. § 16.003 (Vernon 1999); *see also Kansa Reinsurance Co., Ltd. v. Congressional Mortgage Corp.*, 20 F.3d 1362, 1371–72 (5th Cir.1994)(reaffirming prior conclusion of Fifth Circuit that Texas law provides a two year statute of limitations for claims of negligent misrepresentation); *Sioux Ltd. Sec. Litig. v. Coopers & Lybrand*, 914 F.2d 61, 63–64 (5th Cir. 1990). Consequently, this Court is bound to apply the two year statute of limitations to such claims. *See Fluor Engineers & Constr. v. Southern Pac. Transp. Co.*, 753 F.2d 444, 448 (5th Cir.1985). Furthermore, the two year statute of limitation for claims of negligent misrepresentation is not tolled by application of the "discovery rule," as is the case for certain other torts. *See Kansa*, 20 F.3d at 1372 ("We similarly decline to apply the discovery rule to a negligent misrepresentation claim, finding that Texas courts classify such a cause of action as a negligent tort rather than a fraud action.").

According to Eastman, Niro made a variety of representations of material fact, including that Niro had experience in de-

---

1. Paragraph 16 of the Contract specifies that Tennessee law, and Tennessee's interpretation of the Uniform Commercial Code, will apply to any disputes related to the Contract itself.

Thus while Texas law applies to Eastman's tort claims, the parties agree that the breach of contract and breach of warranty claims are governed by Tennessee law.

signing and building a spray fluidization sorbate drying device, that Niro could provide qualified personnel for start-up of the dryer, that the dryer could be made to conform to contractual output specifications, and so forth. Eastman contends that these representations were in fact false, and give rise to a claim for negligent misrepresentation.

However, in its Original Complaint, Eastman contends that these statements were made from January to March of 1995, along with some others in October of 1996. Thus under Texas' two year statue of limitations, the time period in which to bring a claim for the first set of statements expired between January and March 1997. The time limit for the second set of statements expired in October 1998. In light of the fact that Eastman did not bring suit until October 10, 1999, the Court concludes that, as a matter of law, Eastman may not maintain a cause of action for negligent misrepresentation. Eastman appears to have conceded this point in its January 10, 2000 Response to Defendant's Motion for Partial Dismissal. Consequently, Defendant's Motion to Dismiss is **GRANTED** with respect to Eastman's claims of negligent misrepresentation, and all such claims are hereby **DISMISSED WITH PREJUDICE.**

## IV. FRAUD SUBSEQUENT TO FORMATION OF CONTRACT

As previously explained, Texas law governs Eastman's claims which sound in tort.

According to Texas' "independent injury doctrine," under certain circumstances a party is forbidden to simultaneously maintain a contract/warranty cause of action and a tort claim.[2] *See Southwestern Bell Tel. Co. v. DeLanney,* 809 S.W.2d 493, 494–95 (Tex.1991)("If the defendant's conduct ...would give rise to liability independent of the fact that a contract exists between the parties, the plaintiff's claim may also sound in tort." Conversely, if the defendant's conduct...would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds *only* in contract)(emphasis added); *DeWitt County Electric Coop. Inc. v. Parks,* 1 S.W.3d 96 (Tex.1999)(quoting *DeLanney*); *D.S.A., Inc. v. Hillsboro Indep. School Dist.,* 973 S.W.2d 662, 664 (Tex.1998)("[W]e conclude that [plaintiff's] negligent misrepresentation claim must fail for lack of any independent injury."); *Facciolla v. Linbeck Constr. Corp.,* 968 S.W.2d 435 (Tex.App.—Texarkana 1998, no writ)(rejecting plaintiff's attempt to recover damages for both breach of contract and fraud where plaintiff's damages "arise solely from injury to the subject of the contract"); *Robles v. Consolidated Graphics, Inc.,* 965 S.W.2d 552, 559 (Tex.App.— Houston [14th Dist.] 1997, writ denied)(rejecting plaintiff's attempt to recover under fraud theory because defendant breached "a duty solely created by contract" and plaintiff suffered only "an economic injury that is the subject...of the contract.").

**2.** Niro refers to this doctrine as the "economic loss doctrine," a phrase which the Court considers potentially misleading. After all, it is well settled that under Texas law a plaintiff standing in some contractual relationship with defendant may sometimes recover under a tort cause of action despite suffering exclusively from economic losses. *See Formosa Plastics USA v. Presidio Engineers and Contractors, Inc.,* 960 S.W.2d 41, 47 (Tex.1998)(purely economic losses recoverable for fraud in the inducement claim). The Court will use the phrase "independent injury doctrine" to refer to that doctrine which sometimes precludes a plaintiff from pursuing a tort cause of action because plaintiff and defendant stand in a contractual relationship of some sort. It would be better to reserve the phrase "economic loss doctrine" for referring to the conceptually distinct principle, applicable to *contractual strangers,* which permits a plaintiff a tort recovery only if he suffered some demonstrable physical injury in addition to economic losses. *See Louisiana ex rel Guste v. M/V Testbank,* 752 F.2d 1019, 1021 (5th Cir.1985)(rejecting claims of plaintiffs seeking damages for business losses arising from oil spill because, in absence of contractual relationship between the parties, "claims for economic loss unaccompanied by physical damage to a proprietary interest are not recoverable in maritime tort.").

However, not all tort claims succumb to the limitations imposed by the independent injury doctrine. Recently the Texas Supreme Court held that a party may recover tort damages for fraudulent inducement, notwithstanding the fact that such damages are purely economic losses identical to those recoverable under a breach of contract theory. *See Formosa Plastics Corp. USA v. Presidio Engineers and Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998) "[T]his court has continued to recognize the propriety of fraud claims sounding in tort despite the fact that the aggrieved party's losses were only economic losses." *Id.* (citing *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 436 (Tex.1986)). "Moreover, we have held in a similar context that tort damages were not precluded for a tortious interference with contract claim, notwithstanding the fact that the damages for the tort claim compensated the same economic losses that were recoverable under a breach of contact claim." *Formosa*, 960 S.W.2d at 47 (citing *American Nat'l Petroleum Co. v. Transcontinental Gas Pipe Line Corp.*, 798 S.W.2d 274, 278 (Tex.1990)).

Indeed, in light of *Formosa*, Niro more or less concedes that Eastman's fraudulent inducement claim is viable despite the independent injury doctrine. *See Formosa*, 960 S.W.2d at 47 ("Accordingly, tort damages are recoverable for a fraudulent inducement claim irrespective of whether the fraudulent representations are later subsumed in a contract or whether plaintiff only suffers an economic loss related to the subject matter of the contract."); *see also Hoechst Celanese Corp. v. Arthur Bros., Inc.*, 882 S.W.2d 917 (Tex.App.— Corpus Christi 1994, writ denied)(permitting recovery for fraud in inducement despite presence of contract claims). Niro instead focuses its attack on Eastman's claims for fraud subsequent to formation of contract. Thus the question for the Court is whether the independent injury doctrine so clearly applies to Eastman's claims for fraud subsequent to formation of contract that dismissal of such claims is appropriate under the stringent analytical standards governing Rule 12(b)(6) motions.

■ The independent injury doctrine will preclude a tort cause of action if 1) the claim is for breach of duty created *solely* by contract rather than a duty imposed by law, and 2) the injury is only the economic loss to the subject of the contract itself. *See Formosa*, 960 S.W.2d at 45–47 (recognizing that proper analysis involves inquiry into whether source of the duty arises from the contract or from common law, and also involves "an analysis of the nature of the remedy sought by the plaintiff."); *Robles*, 965 S.W.2d at 559 (citing *DeLanney*, 809 S.W.2d at 494–95).

■ It appears to the court that Niro had an independent legal duty not to commit the *intentional* tort of fraud. This duty was not created solely by the contract, but was instead a duty imposed by the common law of Texas. *See Formosa*, 960 S.W.2d at 46 (concluding that defendant labored under duties which did not derive solely from contract, because "Texas law has long imposed a duty to abstain from inducing another to enter into a contract through the use of fraudulent misrepresentations."). Thus the first prong of the test for assessing whether the independent injury doctrine applies is not satisfied.

Moreover, it also appears that, properly read, the losses Eastman allegedly suffered are of a different kind than those contemplated by the subject matter of the Contract. Significantly, Eastman has alleged an injury which goes considerably beyond the typical breach of contract injury in which a plaintiff alleges having paid for and received something less than what was promised. Eastman alleges not just that the dryer failed to conform to the contractual output specifications, but also that Niro recommended that Eastman undertake expensive modifications that would improve the performance of the machine. Eastman alleges that it acted on Niro's recommendations and spent more than

$4,000,000 in attempts to incorporate various changes and modifications to the dryer. In other words, Eastman alleges that it relied on misrepresentations by Niro and suffered losses beyond the subject matter of the contract itself. Consequently, the second prong of the *Formosa* test is also not satisfied. At this juncture, the Court concludes that the independent injury doctrine does not preclude Eastman from pursuing causes of action for both breach of contract/warranty and for fraud subsequent to formation of contract.

Further support for this conclusion comes from *Formosa,* a decision which expressly recognized exceptions to the limitations imposed by the independent injury doctrine, and disapproved lower court decisions which had extended these limitations too far. *See Formosa,* 960 S.W.2d at 47. The holding in *Formosa* concerned fraudulent inducement to contract. Insofar as Eastman had plead a claim for intentional fraud, the *Formosa* decision appears to exempt such claims from the operation of the independent injury rule.

In response to this line of reasoning, Niro cites a variety of cases which it contends shows that Texas courts are reluctant to extend the *Formosa* exception to torts other than fraudulent inducement. All such cases are readily distinguishable.

In the first place, although the holding in *Formosa* applied to a claim of fraudulent inducement, nothing in the *Formosa* decision indicates an intention to strictly limit the exception to fraudulent inducement claims. Much of the language used is quite general: "We too reject the application of *DeLanney* to preclude tort damages in fraud cases." *Id.* at 46. Moreover, in keeping with the relatively unrestricted language of the opinion, the *Formosa* court expressly recognized that the independent injury doctrine did not bar recovery under a theory of tortious interference with contract. *See id.*

Second, Niro cites to *DSA,* in which the court refused to extend the *Formosa* exception to claims of *negligent* misrepresentations and *negligent* inducement. *See*

*DSA,* 973 S.W.2d at 663. In contrast, Eastman's allegations in this case are that Niro's conduct amounted to fraud subsequent to formation of contract, which is a species of *intentional* fraud, and thus similar to the intentional fraud claims pursued in *Formosa* itself. *See Formosa,* 960 S.W.2d at 46. Because fraud is considered a special tort under Texas law, this distinction between negligence and fraud is well grounded. The Texas Supreme Court has recognized that the tort of intentional fraud is distinct from other tort actions, having developed as a quasi-contractual cause of action through assumpsit. *See Williams v. Khalaf,* 802 S.W.2d 651, 654 (Tex.1990) ("In general, torts developed from the common law action for 'trespass'," but in contrast to other torts, the "modern fraud cause of action developed from an action on the case for deceit, and was related to debt as an evolution of the action of asumpsit."); *Matthews v. Am-West Savings Ass'n,* 825 S.W.2d 552, 554 (Tex.App.—Beaumont 1992, writ denied) (recognizing unique status of fraud *vis-a-vis* other torts).

Niro also cites to *DeWitt,* in which the court applied the independent injury doctrine despite the exceptions recognized in *Formosa. See DeWitt,* 1 S.W.3d at 96. However, the contract in *DeWitt* created an easement and was therefore concerned with precisely identifying the rights and obligations of the parties to cut down trees on the subject property. *See id.* Thus the *DeWitt* court concluded that, because the contract expressly controlled the rights and obligations of the parties, "the contract, not common-law negligence, governs any dispute about whether trees could be cut." *Id.* In contrast to the situation in *DeWitt,* Eastman contends that Niro's representations were made subsequent to contract formation and concerned modifications not contemplated by the Contract. Moreover, it should be noted that the *DeWitt* decision was not a rejection of the *Formosa* exceptions, but a reaffirmation of that decision. Citing *Formosa,* the *DeWitt* court noted that "[t]he measure of dam-

ages, standing alone, is not always determinative of whether a tort claim can co-exist with a breach of contract claim." *Id.*

Finally, Niro cites to *Facciolla,* in which the independent injury doctrine was held to apply because the plaintiff could not show any economic loss other than that occasioned by defendant's breach of the contract itself. *See Facciolla,* 968 S.W.2d at 447–48 (rejecting plaintiff's negligence claims because "[i]n this case, [plaintiff's] damages, except for deceptive trade practices and Insurance Code violations, arise solely from injury to the subject of the contract, i.e. her personal property and furniture."). In contrast, Eastman alleges a loss of more than $4,000,000 related to expenditures for modifications not contemplated by the Contract. This sum represents a loss which is well in excess of the purchase price of the potassium sorbate dryer.

Admittedly, given the convoluted evolution of the doctrine, it is no easy task to determine the precise contours of the limitations imposed by the independent injury doctrine under Texas law. The Court fully intends to re-examine this issue at trial, and would be receptive to whatever further illumination counsel might be able to shed on this issue at that time. But at this juncture it does not appear to the Court that Eastman has failed to state a claim for relief under Texas law. Consequently, Niro's Motion to Dismiss Eastman's claims for fraudulent misrepresentation subsequent to formation of contract is **DENIED**.

## V. CONSEQUENTIAL AND INCIDENTAL DAMAGES

Niro contends that Eastman's claims for consequential and incidental damages for breach of contract/warranty must be dismissed because in the Contract Eastman twice waived its right to recover such damages. Paragraph 8 of the Contract provides:

SELLER SHALL NOT BE LIABLE FOR CONSEQUENTIAL DAMAGES SUCH AS LOSS OF PROFIT, LOSS OF USE OR PRODUCTION, AND COSTS OF CAPITAL.

Section VI of the Contract provides:

*DAMAGES.* NOTWITHSTANDING ANY OTHER PROVISION OF THE CONTRACT TO THE CONTRARY, ...IN NO EVENT SHALL NIRO...BE LIABLE IN CONTRACT OR TORT, INCLUDING NEGLIGENCE AND STRICT LIABILITY, FOR ANY SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES OF ANY KIND OR CHARACTER, INCLUDING, BUT NOT LIMITED TO, LOSS OF USE OF PRODUCTIVE FACILITIES OR EQUIPMENT, PLANT DOWNTIME, LOSS OF PRODUCT, CHEMICALS, CATALYSTS, FEEDSTOCK OR OTHER RAW MATERIALS, LOSS OF REVENUES OR PROFITS OR LOSS UNDER PURCHASES OR CONTRACTS MADE IN RELIANCE ON THE PERFORMANCE OR NON–PERFORMANCE OF THE PURCHASED EQUIPMENT...

The Court begins by noting that this is a contract for specialized, custom designed commercial machinery entered into by two highly sophisticated business entities. Put otherwise, the Contract is utterly unlike a contract for consumer goods entered into by a naive and credulous member of the public.

Eastman's response to Niro's Motion to Dismiss on this issue is necessary convoluted, since Eastman has the unenviable task of explaining why is should be permitted to recover consequential and incidental damages despite having, apparently, twice waived such a right in clear and unambiguous language in a freely negotiated, arm's length contract. The first premise in Eastman's argument is that the Contract contains a remedy limitation which mandates repair and replacement as the exclusive remedy for breach of warranty. Paragraph I of the Contract does indeed contain the following provision:

Niro's obligation under this warranty and any other warranty or guarantee which is part of this contract is strictly and exclusively limited to furnishing repairs or replacements for equipment or parts determined to be defective on inspection by an authorized representative of Niro.

Niro does not dispute that the Contract contains a remedy limitation. Consequently, the Court will consider the implications Paragraph I of the Contract may have on Eastman's waiver of consequential and incidental damages.

Eastman's second premiss is that, pursuant to Paragraph 16 of the Contract, Tennessee law, and Tennessee's interpretation of the Uniform Commercial Code ("UCC"), governs any action for breach of warranty or breach of contract. Niro does not dispute this contention, and the Court will analyze the problem under Tennessee law.

Eastman's third premiss is that this limited remedy has failed of its essential purpose, apparently because it does not permit Eastman to recover the purchase price under the Contract if Eastman succeeds in establishing that Niro breached a warranty. In support of this proposition, Eastman cites *Arcata Graphics, Co. v. Heidelberg Harris, Inc.*, 874 S.W.2d 15, 30 (Tenn. Ct.App.1993). However, *Arcata Graphics* merely holds that if a remedy limitation *does* provide for refund of the purchase price, is does not fail of its essential purpose. *Id.* at 29. Logically speaking, *Arcata Graphics* offers no support for the quite different proposition that a remedy limitation lacking a refund of purchase price provision necessarily fails of its essential purpose. Not unexpectedly, Niro strongly disputes that the limitation of remedy has failed of its essential purpose. However, for purposes of the present analysis, the Court will assume that the limitation has failed of its essential purpose.

■ Tennessee has adopted the UCC. The relevant provision, Section 47–2–719, provides as follows:

(2) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in chapters 1–9 of this title. (3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in cases of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.

*See* Tenn.Code Ann. § 47–2–719(2), (3) (1992).

The fourth and crucial premiss in Eastman's argument is that in cases of conflict, 47–2–719(2) trumps 47–2–719(3). In other words, on Eastman's interpretation, when a limited remedy has failed in its essential purpose, pursuant to 47–2–719(2) a "remedy may be had as provided in chapters 1–9 of this chapter," which includes consequential and incidental damages. This is true despite the fact that 47–2–719(3) expressly permits waiver of consequential damages if such waiver is not unconscionable.

On the other hand, Niro contends that 2–719(2) and 2–719(3) are instead freestanding and independent provisions. Thus even if a limitation of remedy fails of its essential purpose under 2–719(2), the waiver of consequential damages under 2–719(3) will still be valid unless unconscionable.

The only authority Eastman cites in support of its interpretation is *R.W. Murray, Co. v. Shatterproof Glass Corp.*, 758 F.2d 266 (8th Cir.1985). Unfortunately, *R.W. Murray* dealt with the interpretation of Missouri law, not Tennessee law, and is thus not particularly persuasive for present purposes. *See id.* at 272.

■ No Tennessee court has addressed the question whether, in cases of conflict, 47–2–719(2) trumps 47–2–719(3), or if instead the two provisions are free-standing. Therefore, this Court must predict how the Tennessee Supreme Court would rule if presented with this question. *See Stool*

*v. J.C. Penney Co.*, 404 F.2d 562, 562 (5th Cir.1968). "Thus where the controlling state law eludes the researcher, the court must attempt to ascertain the policy inclinations of the state's highest tribunal with regard to the matter in controversy. Failing that, the court may assume that the state courts would adopt the rule which, in its view, is supported by the thrust of logic and authority." *Id.*

The Court concludes that under Tennessee law, 2–719(2) and 2–719(3) are independent and free-standing provisions. Eastman does not allege that a waiver of consequential damages is unconscionable, which is not surprising in light of the fact that this is a contract between two sophisticated business entities concerning a custom designed commercial sorbates dryer. Consequently, even on the generous assumption that the remedy limitation fails of its essential purpose, Eastman's twice repeated waiver of its right to recover consequential damages for breach of contract/warranty is valid and enforceable.

First, there is some indication in the case law of the Tennessee Supreme Court that Tennessee is committed to reading the UCC provisions as separate and distinct. *See Ford Motor Co. v. Moulton*, 511 S.W.2d 690 (Tenn.1974) (reading 2–316 warranty disclaimer provision of UCC as independent from the provision in 2–719(3) dealing with waiver of consequential damages).

Second, Comment 3 to Tenn Code Ann. § 47–2–719 supports the conclusion that 2–719(2) and 2–719(3) are meant to stand as independent provisions. Comment 3 provides:

> Subsection (3) recognizes the validity of clauses limiting or excluding consequential damages but makes it clear that they may not operate in an unconscionable manner. Actually such terms are merely an allocation of unknown or undeterminable risks. The seller in all cases is free to disclaim warranties in the manner provided in Section 2–316.

Comment 3 thus recognizes that business entities may want to allocate certain risks between the parties, and under the philosophy of the UCC should be free to do so provided that such a waiver is not actually unconscionable. It often makes much commercial sense for parties to agree that the buyer will shoulder the risk of consequential losses. The seller may not be in a position to evaluate the extent or likelihood of consequential damages, since these risks are largely determined by the buyer's unique business circumstances. Likewise, a buyer may rationally agree to assume the risk of consequential losses rather than pay a higher price for the goods, a price which would necessarily include what amounts to an insurance premium for the seller's assumption of the risk of consequential losses. It would largely undermine the liberty of business entities to allocate unknown or indeterminate commercial risks as they see fit to make the validity of a freely negotiated consequential loss waiver under 2–719(3) dependent on the success of a quite distinct contractual provision concerning limitation of remedy under 2–719(2).

Third, the Tennessee courts are likely to conclude that the better reasoned line of authority from other jurisdictions favors reading 2–719(3) as independent from 2–719(2). This is certainly the modern trend in the jurisprudence. Indeed, a majority of jurisdictions to consider the question has concluded that a waiver of consequential damages can be valid notwithstanding the fact that a limitation of remedy has failed of its essential purpose. *See Schurtz v. BMW of N. Am., Inc.*, 814 P.2d 1108, 1112–14 (Utah 1991) (concluding that plain language of UCC provisions, the associated Official Comments, and policy considerations support interpreting the clauses as independent); *Canal Elec. Co. v. Westinghouse Elec. Corp.*, 406 Mass. 369, 548 N.E.2d 182, 184–85 (1990) ("[W]e conclude that the disclaimer of consequential damages is enforceable even though the limited repair or replacement remedy has failed of its essential purpose."); *Kearney & Trecker Corp. v. Master Engraving Co.*, 107 N.J. 584, 527 A.2d 429,

437 (1987) ("We are also persuaded that many routine business transactions would be dislocated by a rule requiring the invalidation of a consequential damage exclusion whenever the prescribed contractual remedy fails to operate as intended."); *McNally Wellman Co. v. New York State Elec. & Gas Corp.*, 63 F.3d 1188, 1197 (2nd Cir.1995) ("[A] limitation on incidental or consequential damages remains valid even if an exclusive remedy fails."); *Riegel Power Corp. v. Voith Hydro*, 888 F.2d 1043, 1046 (4th Cir.1989) (noting that recent caselaw supports viewing 2–719(2) and 2–719(3) as separate and independent provisions); *Kaplan v. R.C.A. Corp.*, 783 F.2d 463, 466 (4th Cir.1986) (recognizing that New Jersey law regards the two clauses as independent); *Lewis Refrigeration Co. v. Sawyer Fruit, Vegetable and Cold Storage Co.*, 709 F.2d 427, 435 (6th Cir.1983) ("[W]e believe that section 2–719(3) is meant to allow freedom in excluding consequential damages unless a consumer is involved in the contract. This freedom would be abridged by the sweeping interpretation of [2–719(2) ] applied by the district court.") *Chatlos Systems v. National Cash Register Corp.*, 635 F.2d 1081, 1086 (3rd Cir.1980) ("It appears to us that the better reasoned approach is to treat the consequential damage disclaimer as an independent provision, valid unless unconscionable."); *Coastal Modular Corp. v. Laminators, Inc.*, 635 F.2d 1102, 1107 (4th Cir.1980); *S.M. Wilson & Co., v. Smith Int'l Inc.*, 587 F.2d 1363, 1375 (9th Cir.1978); *Myrtle Beach Pipeline Corp. v. Emerson Elec. Co.*, 843 F.Supp. 1027, 1043–44 (D.S.C.1993) ("[T]he court notes that even if a limited remedy fails of its essential purpose, consequential damages may still be excluded.") *aff'd* 46 F.3d 1125 (4th Cir.1995) (table); *Ritchie Enters. v. Honeywell Bull, Inc.* 730 F.Supp. 1041, 1047 (D.Kan.1990) ("When a limited remedy fails of its essential purpose, 2–719(2) abrogates only the remedy limitation and not the warranty disclaimers."); *McKernan v. United Techs. Corp.*, 717 F.Supp. 60, 70–73 (D.Conn.1989); *Williams v. Hyatt Chrysler*, 48 N.C.App. 308, 269

S.E.2d 184, 189 (1980); *Polycon Indus., Inc. v. Hercules, Inc.*, 471 F.Supp. 1316, 1325 (E.D.Wis.1979); *Lincoln Pulp & Paper Co., v. Dravo Corp.*, 436 F.Supp. 262, 278 (D.Me.1977); *American Elec. Power Co. v. Westinghouse Elec. Corp.*, 418 F.Supp. 435, 454–59 (S.D.N.Y.1976). However, the Court recognizes there is some authority to the contrary. *See Deere v. Hand*, 211 Neb. 549, 319 N.W.2d 434 (1982) (in suit between farmer and seller of farm implements, court concluded that if "the seller is given a reasonable chance to correct the defects and the equipment still fails to function properly," the limited remedy has failed of its essential purpose, and the plaintiff can recover "provable consequential damages, even thought specifically excluded by the written warranty."); *Soo Line RR Co. v. Fruehauf*, 547 F.2d 1365, 1373 (8th Cir.1977); *Murray v. Holiday Rambler, Inc.*, 83 Wis.2d 406, 265 N.W.2d 513, 526 (1978).

Finally, it is significant that the only Tennessee based tribunal to address this issue has concluded that, at least for contracts involving sophisticated business entities, a waiver of consequential damages can be valid notwithstanding the fact that the limitation of remedy has failed of its essential purpose. *See Aquascene, Inc. v. Noritsu Am. Corp.*, 831 F.Supp. 602, 604–5 (M.D.Tenn.1993) (prediction by Tennessee federal court sitting in diversity that Tennessee Supreme Court would find 2–719(3) to be independent from 2–719(2)).

 The Court concludes that even if the limitation of remedy provision in the Contract has failed of its essential purpose, Eastman's twice repeated waiver of the right to seek consequential damages under the Contract is valid pursuant to Tenn. Code Ann. § 47–2–719(3). These waivers would only be invalid if, under § 47–2–719(3) they were unconscionable. Eastman does not allege unconscionability. That would most likely be a losing allegation in any event, given that the clauses were conspicuous, duplicative, and unambiguous. The Contract was between so-

phisticated business entities and concerned a custom designed commercial machine. There are no allegations of personal injury. Moreover, under Tennessee law a contract term is unconscionable only when the inequality of the bargain "is so manifest as to shock the judgment of the average person of common sense, and where the terms are so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other." *See Haun v. King,* 690 S.W.2d 869, 872 (Tenn.Ct.App. 1984) (quoting with approval *Brenner v. Little Red School House,* 302 N.C. 207, 274 S.E.2d 206 (1981)); *see also Aquascene,* 831 F.Supp. at 605 (citing *Haun* ). Consequently, Niro's Motion to Dismiss Eastman's claims for consequential and incidental damages arising from breach of contract/warranty is **GRANTED**, and such claims are **DISMISSED WITH PREJUDICE.**

### VI. Conclusion

For the reasons set forth above, Niro's Motion to Dismiss Eastman's claims for negligent misrepresentation is **GRANTED**, and all such claims are **DISMISSED WITH PREJUDICE.** Niro's Motion to Dismiss Eastman's claims for fraud subsequent to contract formation is **DENIED.** Niro's Motion to Dismiss Eastman's claims for consequential and incidental damages related to breach of contract and breach of warranty is **GRANTED**, and all such claims are **DISMISSED WITH PREJUDICE.** The parties are **ORDERED** to bear their own taxable costs and expenses incurred herein to date. The parties are also **ORDERED** to file no further pleadings on these issues in this Court, including motions to reconsider or the like. In due course, the Court will enter a Final Judgment on all claims dismissed herein.

**IT IS SO ORDERED.**