### PATAPSCO DESIGNS, INC.

v.

### DOMINION WIRELESS, INC.

No. CIV. JFM-03-624.

United States District Court, D. Maryland.

Aug. 5, 2003.

Dion W. Hayes, Scott Andrew Simmons, McGuire Woods LLP, Richmond, VA, for Plaintiff.

Christopher L. Rogan, Wickwire Gavin PC, Vienna, VA, for Defendant.

## MEMORANDUM

MOTZ, District Judge.

Patapsco Designs, Inc. ("Patapsco") instituted this action against Dominion Wireless, Inc. ("Dominion"), alleging breach of contract for failure to pay for goods received. Dominion filed a counterclaim, alleging that Patapsco breached the contract by failing to meet its obligations to render conforming goods in a timely fashion. Patapsco moves to dismiss the counterclaim. For the reasons stated below, I will grant the motion.

### I.

On October 18, 2001, Dominion and Patapsco entered into a written contract whereby Patapsco agreed to assemble and sell to Dominion certain custom electronic components. Dominion incorporates these components into radio frequency location alert systems it manufactures and sells.[1]

---

1. The facts set forth are primarily as alleged in Dominion's counterclaim. Those facts are supplemented by undisputed contextual information drawn from Patapsco's complaint.

(Compl. ¶¶ 5–7; Countercl. ¶ 38.) The contract contains several disclaimers protecting Patapsco, two which are relevant to this motion. The first disclaimer provides that Patapsco's sole liability for nonconforming goods is the repair or replacement of such goods. (Pl.'s Mem. Ex. A, Misc. Term 2.) A second disclaimer limits Patapsco's liability in any event to the purchase price of the goods and specifically excludes consequential and other types of damages. (*Id.*, Misc. Term 4.)

Patapsco manufactured and delivered to Dominion electronic components requisitioned through subsequent purchase orders. Dominion alleges that Patapsco's initial delivery of a significant portion of the goods was one month late. (Countercl. ¶ 36.) In addition, Dominion charges it was forced to return 395 Power Line Sensor Units ("PSUs") and 49 chassis assemblies that malfunctioned on delivery. (*Id.*) Of those units, Patapsco corrected the defects on 186 PSUs and on all 49 of the chassis assemblies pursuant to its warranty obligations. (*Id.*) The redelivery of the repaired goods, along with 209 PSUs that allegedly continued to malfunction, took place three months after the scheduled delivery date. (*Id.*)

In March 2003, Patapsco filed suit alleging Dominion had failed to pay at least $981,268.17 of the purchase price for the goods. (Compl. ¶ 10.) Dominion counterclaimed alleging Patapsco breached the contract by delivering nonconforming goods, delaying the date of delivery, and breaching the express and implied warranties. (Countercl. ¶¶ 39–56.) As a result, Dominion was late in delivering, or was unable to deliver, finished products to its customers—resulting in the damages it now claims. (Countercl. ¶¶ 41, 48.) Patapsco has moved to dismiss the counterclaim, relying upon the contractual provision excluding consequential damages.

## II.

Dominion does not deny that the damages it seeks are consequential damages. (*See* Def.'s Opp'n at 2.) Rather, Dominion argues that the limitation regarding consequential damages is unenforceable. Dominion argues: (1) that the contractual limitations upon remedies contain an ambiguity making it impossible for Dominion to have consented to the terms; (2) that the limited remedy of repair or replacement failed of its essential purpose; and (3) that when a limitation has failed of its essential purpose, a contractual limitation on consequential damages need not be unconscionable in order to be unenforceable under Maryland law.

## A.

■ The contractual limitations upon remedies and damages do not contain an ambiguity. The provisions that Dominion claims are in conflict with each other (and therefore create an ambiguity) are, in fact, easily reconciled. The first provision cited by Dominion, Miscellaneous Term 2 ("Term 2"), addresses the extent of Patapsco's liability in the event it fails to produce goods conforming to the express warranty that the goods will be free from defects in materials and workmanship. It reads:

> If any of the Products provided by Seller do not comply with any of the express warranties set forth above and Buyer gives seller notice of such non-compliance within the warranty period, Seller shall repair or replace the non-conforming Products. Seller's sole liability to Buyer for Products not conforming to any of the express warranties is limited to repair or replacement of such products.

(Pl.'s Mem. Ex. A, Misc. Term 2.) The allegedly conflicting provision, Miscellaneous Term 4 ("Term 4"), states:

SELLER'S LIABILITY FOR ANY LOSS OR DAMAGE ARISING OUT OF, RESULTING FROM, OR IN ANY WAY CONNECTED WITH THIS AGREEMENT SHALL NOT EXCEED BUYER'S PURCHASE PRICE FOR THE PARTICULAR GOODS UPON WHICH SUCH LIABILITY IS BASED REGARDLESS OF WHETHER SUCH LIABILITY ARISES IN CONTRACT, TORT, OR OTHERWISE. IN NO EVENT SHALL SELLER BE LIABLE TO BUYER FOR ANY LOSS OF PROFITS, REVENUE, DATA OR USE, OR FOR ANY INDIRECT, SPECIAL, CONSEQUENTIAL OR PUNITIVE DAMAGES.

(Pl.'s Mem. Ex. A, Custom Products Bid/ Buy Contract, Miscellaneous Term 4.) Dominion finds ambiguity in the fact that both Term 4 and Term 2 could become applicable, allegedly making it unclear as to which provision to apply. The mere fact, however, that one situation could trigger both limitations does not bring them into conflict with each other.

The first provision applies when Patapsco has delivered nonconforming goods and it limits Patapsco's liability in that particular situation to the repair or replacement of the nonconforming good. The second provision serves as a more general cap on the amount and type of damages Dominion could recover for any reason. Dominion argues that the repair or replacement obligation "may have quite a different value than the purchase price limitation in Term 4." (Def.'s Opp'n at 4.) Though that may be true, it is irrelevant because the limitation in Term 4 is designed as a ceiling on the amount of recoverable damages—it need not be of the same value. The limitations, as agreed to by both parties, set the level of potential recovery at different heights for different situations. Term 2 specifically addresses a failure to produce conforming goods as

expressly warranted. Term 4, on the other hand, limits recovery for actions based in "tort, contract, or otherwise" and covers all types of contractual recovery, including liability contemplated by Term 2. If Term 2 applies to the situation, the value of the repair or replace obligation may continue to rise until it reaches a level that triggers the cap of the Term 4 limitation. The operation of the contract in this fashion does not make the provisions conflicting and does not produce an ambiguity allowing Dominion to claim it could not have consented to these terms.

### B.

Dominion next argues that Patapsco's failure to fulfill its obligation to repair or replace the defective goods as required under Term 2 causes that provision to fail of its essential purpose. According to Maryland's Uniform Commercial Code ("UCC"), if an exclusive or limited remedy has failed of its essential purpose, then the full panoply of remedies under the UCC becomes available. *See* Md.Code Ann., Comm. Law I § 2–719.

The record in this case is not sufficiently developed to determine whether the limitation upon remedies embodied in Term 2 has failed of its essential purpose. The determination would require further development of the facts surrounding the intentions of the parties at the time of contracting and the performance of the obligation under the limited remedy provision. *See, e.g., Riegel Power Corp. v. Voith Hydro,* 888 F.2d 1043, 1046 (4th Cir.1989) (affirming the district court's summary judgment determination that the limited remedy had not failed of its essential purpose); *Dowty Communications Inc. v. Novatel Computer Sys. Corp.,* 817 F.Supp. 581, 585 (D.Md. 1992) (setting forth two methods "of determining whether a particular set of facts deems a restricted contractual remedy to

fail of its essential purpose").[2] For purposes of this motion to dismiss, I must assume the truth of the facts as alleged in the counterclaim. Dominion does not specifically allege in its counterclaim that Patapsco was fundamentally unable or unwilling to repair or replace defective units or that Patapsco repudiated its warranty obligations in bad faith. Dominion does, however, allege that it received 209 PSUs that continued to malfunction despite being previously returned to Patapsco for repair. (Countercl.¶ 36.) This allegation and the reasonable inferences drawn from the other circumstances alleged in the counterclaim support the possibility that the limited remedy in Term 2 failed of its essential purpose.

## C.

■ The resolution of this motion, however, does not turn upon whether the limited repair or replace remedy of Term 2 failed of its essential purpose. I will assume *arguendo* that the limited remedy of Term 2 did fail. The question that must be answered is what effect, if any, the failure of the limited remedy of Term 2 has upon the more specific proscription against consequential damages embodied in Term 4.

Dominion argues Patapsco's failure to comply with the limited remedy of repair or replacement in Term 2 causes the Term 4 limitations to fail as well. Contracting parties' ability to limit or exclude consequential damages is specifically addressed by subsection 2–719(3) of the Maryland UCC. *See* Md.Code Ann., Comm. Law I § 2–719.[3] This subsection provides that consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. *Id.* § 2–719(3). The question then becomes whether subsection 7–219(2) applies, potentially making all forms of damages available when a limited remedy has failed of its essential purpose, or whether subsection 7–219(3) governs, allowing a party to rely upon a contractual provision excluding consequential damages as long as the provision providing for such exclusion is not unconscionable. *See Eastman Chemical Co. v. Niro, Inc.,* 80 F.Supp.2d 712 (S.D.Texas 2000) (characterizing the inquiry as whether § 719(2) trumps § 719–(3) or the two provisions are free-standing).

■ Many courts have commented and ruled upon the interplay and apparent tension between these two provisions of the UCC. The courts of Maryland, however, have not had the opportunity to clarify how these provisions operate when set against each other. My review of the statutory text and relevant case law leads me to conclude that were the Court of Appeals of Maryland to rule on the issue, it would hold that the provision excluding consequential damages survives even if another

---

**2.** The first method of determining whether the provision has failed of its essential purpose "is to assess the potential breaches envisioned by the parties when they agreed to limit their remedies and then to compare the actual breach to the parties' initial expectations." *See Dowty,* 817 F.Supp. at 585. The second method involves evaluating "the compliance of the party in breach with its limited remedial responsibilities. If the party violating the agreement fails to compensate the innocent party in the limited manner provided for by the contract, the remedy has failed of its essential purpose." *See id.* at 586.

**3.** The section of Maryland Code involved reads, in part:

§ **2–719. Contractual modification or limitation of remedy.**
(2) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in Titles 1 through 10 of this article.
(3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable.

provision limiting the remedy in certain circumstances has failed of its essential purpose. In other words, a contractual provision limiting or excluding consequential damages should fail to operate only if it is found to be unconscionable.

Support for this interpretation of Maryland's UCC can be found in the Official Comment accompanying the statutory text. *See* Md.Code Ann., Com. Law II § 2–719, comment 3. Comment 3 reads:

> Subsection (3) recognizes the validity of clauses limiting or excluding consequential damages but makes it clear that they may not operate in an unconscionable manner. Actually such terms are merely an allocation of unknown or undeterminable risks. The seller in all cases is free to disclaim warranties in the manner provided in Section 2–316.

*Id.* Comment 3 thus recognizes that sophisticated business entities may want to allocate risks that are "unknown or undeterminable," and should be free to allocate those risks as desired, provided the waiver is not unconscionable. It is often the case that the burden of this risk will be placed upon the buyer. Another district court has reasoned that:

> The seller may not be in a position to evaluate the extent or likelihood of consequential damages, since these risks are largely determined by the buyer's unique business circumstances. Likewise, a buyer may rationally agree to assume the risk of consequential losses rather than pay a higher price of the good, a price which would necessarily include what amounts to an insurance premium for the seller's assumption of the risk of consequential losses.

*Eastman Chemical,* 80 F.Supp.2d at 721. The court in *Eastman* went on to say, "[i]t would largely undermine the liberty of business entities to allocate unknown or indeterminate commercial risks as they see fit to make the validity of a freely negotiated consequential loss waiver under 2–719(3) dependent on the success of a quite distinct contractual provision concerning limitation of remedy under 2–719(2)." *Id.* Thus, Comment 3 indicates it is reasonable to allow these two subsections of the Maryland UCC to operate as free-standing and independent provisions.

Moreover, this interpretation squares with the manner in which the Fourth Circuit has interpreted these provisions of the UCC. *See Kaplan v. RCA Corp.,* 783 F.2d 463, 467 (4th Cir.1986); *Coastal Modular Corp. v. Laminators, Inc.,* 635 F.2d 1102, 1107 (4th Cir.1980) (applying Maryland law). In *Coastal Modular,* the Fourth Circuit addressed a situation in which a limited remedy had failed of its essential purpose, but the parties had *not* additionally agreed to limit consequential damages. *Coastal Modular,* 635 F.2d at 1107. The court reasoned that the failure to include a waiver of consequential damages made such damages available after the limited remedy failed of its essential purpose. *Id.* The court noted, however, that the outcome of the case would be different had the parties agreed to a waiver of consequential damages: "Section 2–719(3) is not limited by the other subsections of 2–719. Had [defendant's] warranty specifically limited consequential damages, [plaintiff] could have only received its costs of the material even though that represented partial failure of the essential purpose of the warranty." *Id.* The court also indicated that a knowing acceptance of an agreement to waive consequential damages would bind the parties unless the limitations were unconscionable. *Id.* While the statements made by the court clearly constitute *dicta,* they nonetheless guide my examination of the conflicting provisions.[4]

---

**4.** In the case Dominion would have me rely upon, the court resolved the issue through its construction of the contract and chose not to address the broader relationship between UCC § 2–719(2) and § 2–719(3). *See Waters*

This approach is in step with the modern trend of jurisprudence on this question. *See Riegel Power*, 888 F.2d at 1047 (noting in *dicta* that more recent cases indicate the two provisions are independent and are to be applied as such). "Indeed, a majority of the jurisdictions to consider the question has concluded that a waiver of consequential damages can be valid notwithstanding the fact that a limitation of remedy has failed of its essential purpose." *Eastman Chemical*, 80 F.Supp.2d at 721–22 (citing numerous

cases holding that the two provisions operate independently).[5]

## D.

■■■ Dominion finally argues that enforcement of the limitation on consequential damages would be unconscionable. This argument is unavailing. An unconscionable agreement is defined as "one 'such that no man in his senses and not under delusion would make on the one hand, and no honest and fair man would accept on the other.'" *Schrier v. Beltway Alarm Co.*, 73 Md.App. 281, 533 A.2d 1316

*v. Massey–Ferguson, Inc.*, 775 F.2d 587, 591 (4th Cir.1985) (applying North Carolina law). In *Waters*, a farmer purchased a tractor from Massey–Ferguson that subsequently malfunctioned. Despite repeated attempts over several years, Massey–Ferguson was unable to effectuate repairs on the tractor causing the farmer "catastrophic financial losses." *Id.* at 588.

Instead of focusing upon the relationship between the statutory provisions, the court examined the exclusion of consequential damages from three perspectives—"through the specific light of its written context, its creative context, and its commercial context"—and found that the exclusion did not extend to the manufacturer's failure to fix this farmer's tractor. *Id.* at 591. Examining Patapsco–Dominion contract from the three perspectives described in *Waters*, one quickly finds that significant differences exist.

Most importantly, the commercial context between these two cases differs dramatically. The *Waters* court specifically noted that the subject matter of the transaction, "the Massey–Ferguson tractor, is built from familiar technology, manufactured to standard specifications, and sold to trusting consumers; most important, sellers routinely restore such tractors to working order." *Id.* at 592. Based upon these characteristics, the court concluded that "the premise that the warranty foresaw only repair is a commercially reasonable construction." *Id.* Significantly, the court went on to note that "[f]or another product, and *particularly for complex, delicate, or jointly designed equipment,* the same premise might not be commercially reasonable." *Id.* (emphasis added). The court recognized the possibility of the very situation now at hand

and specifically noted that construing a contract for the manufacturer of complex, delicate, and jointly designed equipment as foreseeing certain repair of that equipment might not be commercially reasonable.

At the end of the *Waters* opinion, the court explained that by ruling in Waters favor, it was not painting with a broad brush. The court said, "We treat these points only in interpreting the litigated contract between Waters and Massey–Ferguson. We accordingly advance no general opinions about the enforceability of another warranty that does purport to exclude seller liability for consequential damages." *Id.* at 593. Given this final statement of the court and the distinguishing circumstances of the two cases, it becomes clear that resolution of the conflict between the two UCC provisions at issue in this case is not to be found in *Waters*.

5. *Cooley v. Big Horn Harvestore Sys. Inc.*, 813 P.2d 736, 745–48 (Colo.1991), also cited by Dominion as the correct approach to resolving the tension between these two UCC provisions, constitutes the minority view. Moreover, the *Cooley* court itself chose not to "suggest absolute guidelines for the reconciliation of these two provision in all cases." *Cooley*, 813 P.2d at 747–748. Like the court in *Waters*, its decision to construe the two provisions as dependent upon one another rested in large part on the fact "[t]he language excluding consequential damages and the language limiting remedies appears in the same sentence of the agreement." *Id.* at 748. The relevant language in the Patapsco–Dominion contract appears in separately numbered provisions.

(1987) (quoting *Earl of Chesterfield v. Janssen,* 28 Eng. Rpr. 82 (1750)). The underpinnings of the unconscionability doctrine are the prevention of oppression and unfair surprise. *See Leet v. Totah,* 329 Md. 645, 620 A.2d 1372, 1380 (1993). "[W]hen determining whether an entire contract or any of its parts is so unconscionable as to justify its judicial recission or cancellation, the matter will not be judged by hindsight but by the situation as it existed at the time the bargain was struck." *Gladding v. Langrall,* 285 Md. 210, 401 A.2d 662 (1979).

Dominion has not alleged and cannot establish that enforcement of the consequential damages limitation in its contract with Patapsco would either be oppressive or subject it to unfair surprise. Relying upon *dictum* in *Dowty Communications, Inc. v. Novatel Computer Systems Corp.,* 817 F.Supp. 581 (D.Md.1992), Dominion asserts that unconscionability may be found in failure of the essential purpose, in the impact of the breach upon the seller's performance, or in the failure of the seller to meet its good faith performance obligations. While the *Dowty* court did examine, and ultimately rejected, each of these possible reasons for refusing to enforce the remedial limitations in the contract before it, its specific application of the unconscionability doctrine focused upon the principles outlined in the preceding paragraph. *See Dowty,* 817 F.Supp. at 589–90 (quoting the definition of unconscionability from *Earl of Chesterfield v. Jannsen,* 28 Eng. Rpr. 82 (1750)). Given the subject matter of the contract in this case—the production of complex electronic components to buyer's specifications for incorporation into buyer's own products—Dominion cannot assert that an exclusion of consequential damages was unreasonable or qualifies as unconscionable as that term is defined by Maryland courts. *See, e.g., Kaplan,* 783 F.2d at 467 ("[Defendant] certainly did not have to subject itself to multi-million dollar

liability for consequential losses by supplying a radio antenna for $12,000. It could, as it did, properly allocate that risk to Metrolina."); *Lefebvre Intergraphics, Inc. v. Sanden Machine Ltd.,* 946 F.Supp. 1358, 1371–72 (N.D.Ill.1996). Clearly expressed and appearing in capital letters in Term 4, the exclusion of consequential damages constitutes no unfair surprise or oppression on the part of the seller.

A separate order is being entered herewith.

### ORDER

For the reasons stated in the accompanying memorandum, it is this 5th day of August 2003

ORDERED that plaintiff's motion to dismiss defendant's counterclaim is granted.