Gilbert **WATERS**, Appellee,

v.

**MASSEY–FERGUSON, INC.**, Appellant.

No. 84–1882.

United States Court of Appeals, Fourth Circuit.

Argued April 4, 1985.

Decided Oct. 28, 1985.

Rehearing Denied Dec. 6, 1985.

William Reynolds Williams, Florence, S.C. (Willcox, Hardee, McLeod, Buyck & Baker, Florence, S.C., on brief) for appellant.

Clarke W. DuBose, Columbia, S.C. (H. Simmons Tate, Jr., Boyd, Knowlton, Tate & Finlay, P.A., Columbia, S.C., on brief) for appellee.

Before MURNAGHAN, ERVIN and WILKINSON, Circuit Judges.

WILKINSON, Circuit Judge:

This case presents a familiar problem in commercial law. Separate warranty provisions limited a buyer's remedies for defective goods to the repair or replacement of parts and limited the buyer's recoverable losses from defective goods by disclaiming seller responsibility for consequential damages. The goods in fact were defective, the seller could not repair, and the buyer suffered catastrophic financial losses. In the subsequent lawsuit, the seller relies on the warranty exclusion of consequential damages. We find, however, that the exclusion expressed in this contract does not extend to the situation in which the seller fails to repair the goods. We therefore affirm the award of damages to the buyer.

I

Gilbert DuPree Waters is a farmer in Kershaw County, South Carolina. He con-

centrates primarily on soybeans, planting approximately 3000 acres of land that usually yield twenty to twenty-five bushels per acre. To improve his planting efficiency, Waters in September 1977 purchased a new Massey-Ferguson tractor for slightly over $31,000. He used the machine briefly that autumn for land preparation and then turned to it in the planting season of the following year for its first significant work. Waters—along with the other farmers of Kershaw County—plants his soybeans between the end of April and the middle of June in order to benefit from the most favorable combination of sun and rain. Time is a matter of vital importance to Waters during this season; although temporary delays might be expected, a lengthy delay can extend planting into the summer weeks and cause soybean yields to fall sharply.

Unfortunately, Waters' new tractor suffered serious hydraulic failures in the spring of 1978 and Waters in turn suffered serious planting delays. As a Massey-Ferguson dealer, Waters was able to arrange for prompt service attention within his own shop, but the company-trained service personnel were not able to solve the hydraulic problem. The unavailability of his equipment and the limited rental market for tractors forced Waters to hire neighboring farmers to plant his fields, which they did after they had completed their own work. This process of custom farming was not only more expensive but much slower than Waters' planned planting pattern. He missed the optimal spring interval, with dismaying results. Where one nearby Kershaw County farmer testified to returns of twenty-six bushels for each acre in 1978, Waters could report little more than ten bushels. He estimated his lost profits at nearly $300,000.

In the winter before the 1979 planting season, Waters sent his tractor to a Massey-Ferguson "rectification program" in Tifton, Georgia. The company returned the machine in April, but it came back with the same hydraulic problems that had hindered operations the previous spring. Again Waters' yields were far below those of his neighbors. He tried another Massey-Ferguson rectification program that autumn, this time in Elloree, South Carolina, but in the following 1980 season neither the tractor nor the crop came significantly closer to expectations. Waters realized shortly after this point that the problem with the equipment was intractable. He sold his attachments for the machine—which with a lifetime total of 900 hours by January 1981 had performed less work in three years than the 1000 hours usually demanded of such a tractor in one year—and he purchased a different model.

In August 1983 Waters filed suit against Massey-Ferguson, claiming primarily that the company had breached its warranty on the tractor.[1] The sales agreement had guaranteed that "Massey-Ferguson warrants its new agricultural equipment to be free of defects in material and workmanship at time of delivery to the first retail purchaser" and had promised that in the event of a mechanical problem "the company will repair or replace, at its option, without charge for parts or labor any defective part of the equipment." According to Waters, Massey-Ferguson had failed to repair and refused to replace the tractor; he now sought compensation for the direct damages incurred in purchasing a deficient product and more important, compensation for the incidental and consequential damages that he had suffered in substitute planting expenses and in lost profits on his crop. Massey-Ferguson responded that Waters, through the same warranty agreement, had assumed all risk of such indirect damages.

The heart of controversy was and is the proper interpretation and enforcement under governing South Carolina law of the

---

1. Waters also claimed a breach of warranty on the second tractor, for which he recovered $6,500 in direct damages. Massey-Ferguson in turn counterclaimed on disputes related to Waters' dealership, for which the court granted a directed verdict of $138,240. Neither of these judgments is at issue on this appeal.

self-limiting clauses of the contract, which state in relevant part:

EXCLUSIVE EFFECT OF WARRANTY AND LIMITATION OF LIABILITY

THIS WARRANTY IS IN LIEU OF ALL WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PURPOSE OR OTHER REPRESENTATIONS, WARRANTIES OR CONDITIONS, EXPRESS OR IMPLIED.

The remedies of the Owner set forth herein are exclusive. The Company neither assumes nor authorizes any person to assume for it any other obligation or liability in connection with the sale of covered machines.

Correction of defects in the manner and for the applicable period of time provided above shall constitute fulfillment of all responsibilities of the Company to the Owner and the Company shall not be liable for negligence, under contract or in any other manner with respect to such machines. IN NO EVENT SHALL THE OWNER BE ENTITLED TO RECOVER FOR INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES SUCH AS BUT NOT LIMITED TO, LOSS OF CROPS, LOSS OF PROFITS OR REVENUE, OTHER COMMERCIAL LOSSES, INCONVENIENCE OR COST OF RENTAL OR REPLACEMENT EQUIPMENT.

These exculpatory provisions illustrate a mutually reinforcing structure so commonplace that one leading textbook discusses it as "the standard warranty." *See* A. Schwartz & R. Scott, *Commercial Transactions*, 189–196 (1982). The most important features of that standard warranty in the present case are (1) the limitation of the

seller's obligation to the repair and replacement of parts and (2) the exclusion of seller liability for consequential damages. Both parties recognize that the former provision, the exclusive remedy of the buyer, has "failed of its essential purpose" in the sense described by the South Carolina enactment of the Uniform Commercial Code at S.C.Code § 36–2–719(2).

The parties differ, however, in the implications that they draw from this common point. Waters argues that the collapse of his sole remedy of repair and replacement means that the bar to consequential damages must also fall, referring to the rule of § 36–2–719(2) that "where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this act." Massey-Ferguson argues that "this act" still prohibits Waters from recovering consequential damages notwithstanding the failure of his exclusive remedy, because § 36–2–719(3) provides that "consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable." Seeing no unconscionability here, Massey-Ferguson feels no liability.

 The district court accepted the reasoning of Waters, allowing him to present evidence of his replacement planting expenses and his lost profits. The jury was sufficiently persuaded by that evidence to award him $282,500 for these indirect losses in addition to its award of $9,700 for the difference in value between the warranted tractor and the actual tractor. Massey-Ferguson now appeals the availability of incidental and consequential damages.[2]

---

**2.** Beyond the effect of the exclusion clause, Massey-Ferguson briefly raises several other objections to the award. Correctly noting that consequential damages, if available at all, are available only in conformity with S.C.Code § 36–2–715(2), the company argues that Waters did not attempt to mitigate the inconvenience of the tractor failure, that poor farming rather than a poor tractor explains the disappointing crop, and that Waters' lost profits were far less than the amount awarded. But we must view the evidence in the light most favorable to the appellee, Wright & Miller, *Federal Practice & Pro-*

*cedure* § 2524, and in that light the evidence plausibly shows that Waters adopted the best substitute course open to him, that delayed planting caused his low yields, and that his lost profits considerably exceeded the jury award.

Massey-Ferguson also contends that the district court erred in allowing the jury to consider losses sustained in the 1980 planting season, which began after the warranty expired. Whatever its force, however, this argument is now foreclosed because the appellant did not object at trial to the jury charge on the relevant period

## II

Although the parties urge us to consider a perceived statutory tension between the relief that may be opened to a buyer by § 36–2–719(2) and the relief that may be closed to a buyer by § 36–2–719(3), the threshold inquiry is always one of contractual construction. Because Massey-Ferguson has both sold Waters a defective tractor and proved unable to remedy its defects, "there are two breaches of the contract; the first being the failure to deliver goods conforming to the express warranty, and the second being the failure to correct the nonconformity as was promised in the parties' agreement." *Koehring Co. v. A.P.I., Inc.*, 369 F.Supp. 882, 890 (E.D. Mich.1974). We must then determine whether the exclusion of consequential damages applies "not only to damages flowing from breach of the obligation to deliver nondefective goods, but equally to breach of the promise to repair them." Eddy, *On the 'Essential' Purposes of Limited Remedies: The Metaphysics of U.C.C. Section 2–719(2)*, 65 Calif.L.Rev. 28, 65–66 (1977). We examine the exclusion from three perspectives—through the specific light of its written context, its creative context, and its commercial context—and we find that the exclusion does not extend to the situation in which Massey-Ferguson has failed to fix Waters' tractor. We therefore affirm the award of consequential damages without addressing the broader relationship between § 36–2–719(2) and § 36–2–719(3).

The most important source of this conclusion is of course the written expression of the agreement between Waters and Massey-Ferguson: to determine the meaning of the warranty, as of any contract, "resort is first to be had to its language." *Superior Automobile Insurance Company v. Maners*, 261 S.C. 257, 199 S.E.2d 719, 722 (1973). That language reveals an unequivocal assumption that Massey-Ferguson will be able to correct any mechanical problem in the tractor. The definition of Waters'

remedies flatly states that "the Company *will* repair or replace ... any defective part of the equipment" (emphasis added). In a significant contrast, the contract explicitly recognizes that Massey-Ferguson might break its other promise, the promise to deliver satisfactory new goods, but nowhere suggests—much less provides for—the possibility that repair may be impossible. *Contrast U.S. Fibres, Inc. v. Proctor & Schwartz, Inc.*, 358 F.Supp. 449, 456 (E.D.Mich.1972), *aff'd*, 509 F.2d 1043 (6th Cir.1975) (warranty stated that "the Company shall have the opportunity of making the machine conform to the provisions of this contract. If the Company is unable to do so ...").

The premise of certain repair informs the reading of the entire contract. The self-limiting clauses build directly on that framework. "Correction of defects," according to the first sentence of the crucial paragraph, *"shall constitute fulfillment* of all responsibilities of the Company to the owner *and* the Company shall not be liable for negligence, under contract or in any other manner with respect to such machines" (emphasis added). The implication of this exculpation is that Massey-Ferguson seeks to disclaim any further obligation beyond effecting repair, not that Massey-Ferguson seeks to repudiate its obligation or to anticipate a failure to meet that obligation. The next sentence, the exclusion of consequential damages, finds its meaning within the same framework. The exclusion logically refers to losses incurred by Waters during a reasonable time before which repairs are successful, the only situation contemplated by the contract although not, of course, the situation now confronted by the parties.

Simply put, we find that a reading of the clauses in their written context reveals that the parties contemplated certain repair of the tractor. We must interpret other disputed provisions in light of this premise. Contemplating only repair, the parties did not anticipate any need to limit damages

---

for consequential damages. In a complex trial this is precisely the kind of point that Fed.R.

Civ.P. 51 contemplates that a party will bring to the attention of the trial judge.

from the failure of this remedy and did not do so.

Massey-Ferguson points to the expansive contractual words that define the exclusion. The warranty states that *"in no event* shall the owner be entitled to recover for incidental, special or consequential damages such as but not limited to, loss of crops, loss of profits or revenue, other commercial losses, inconvenience or cost of rental or replacement equipment" (emphasis added). When read in isolation, this sentence does extend to the exclusion of seller liability in the present situation, and apparently in any situation. But the sentence is not to be read in isolation. "It is axiomatic that the intent and purport of a written contract or agreement has to be gathered from the contents of the entire agreement and not from any particular clause or provision thereof." *Bruce v. Blalock*, 241 S.C. 155, 127 S.E.2d 439, 442 (1962). Context is crucial to content. Here the independent sentence suggests an unbounded ambition to exclude, but its true ambit is defined, and confined, by the premises and assumptions that shape the entire agreement. As the specific purpose of a contract controls the interpretation of general language, *Rhea v. Maxwell*, 116 S.C. 184, 107 S.E. 248 (1920), the specific structure of this contract—framed by a certainty of repair—establishes the intent and limits the reach of "in no event." The general exclusion best fits within the warranty perspective as a reference to consequential damages pending repair. Similar reasoning has been applied to exclusion clauses that in isolation seemed no less universal. *See Consolidated Data Terminals v. Applied Digital Data Systems*, 708 F.2d 385 (9th Cir.1983) (holding inapplicable a seller's provision that excluded "any consequential damages, loss or expense arising in connection with the use of or the inability to use its products or goods for any purpose whatsoever.")

■ This textual analysis is reinforced by two other considerations that lead us to the same interpretation of the exclusion provision. First, the creative context of the contract—the warranty was written solely by Massey-Ferguson—places upon the Company the duty to articulate the agreement precisely. If a clause reasonably admits of two different meanings, ambiguity must be resolved against the drafting party. *Williams v. Teran, Inc.*, 266 S.C. 55, 221 S.E.2d 526, 529 (1976). This principle of authorial responsibility applies with particular force to a seller's attempt to shift liability for consequential damages to a buyer, as the enforcement of such a provision is generally justified through the buyer's superior ability to calculate and then to reduce the risk of substantial loss. *See, e.g.*, A. Schwartz & R. Scott, *Commercial Transactions*, 192–196 (1982). Without clear notice of that large potential liability, the buyer cannot make use of these supposed advantages.

Second, the commercial context of the contract—the arrangement was for the sale of a tractor—supports the inference that Waters and Massey-Ferguson anticipated certain repair as a limit to their warranty agreement. Along with the roles of the parties in contract formation, the subject matter of a transaction is of special importance in clarifying written ambiguities. *Langston v. Niles*, 265 S.C. 445, 219 S.E.2d 829, 833 (1975). The subject matter of this transaction, the Massey-Ferguson tractor, is built from familiar technology, manufactured to standard specifications, and sold to trusting consumers; most important, sellers routinely restore such tractors to working order. Given these mechanical and marketing characteristics of the tractor, the premise that the warranty foresaw only repair is a commercially reasonable construction. For another product, and particularly for complex, delicate, or jointly designed equipment, the same premise might not be commercially reasonable. Principles similar to this interpretative reasoning from the subject of the contract help to explain the pattern of enforcement and non-enforcement in the vast majority of cases addressing exclusions of incidental and consequential damages. *Compare, e.g., Adams v. J.I. Case*, 125 Ill.App.2d 388, 261 N.E.2d 1 (1970) (crawler loader trac-

tor); *Riley v. Ford Motor Co.*, 442 F.2d 670 (5th Cir.1971) (automobile); *Beal v. General Motors Corp.*, 354 F.Supp. 423 (D.Del. 1973) (diesel tractor); *Ehlers v. Chrysler Motor Corp.*, 88 S.D. 612, 226 N.W.2d 157 (1975) (automobile); *Soo Line Railway Co. v. Fruehauf Corp.*, 547 F.2d 1365 (8th Cir. 1977) (railroad car); *Clark v. International Harvester Co.*, 99 Idaho 326, 581 P.2d 784 (1978) (turbo-diesel tractor); *Murray v. Holiday Rambler, Inc.*, 83 Wisc.2d 406, 265 N.W.2d 513 (1978) (motor home); *Massey-Ferguson, Inc. v. Evans*, 406 So.2d 15 (Miss.1981) (grain drill and combine) *with County Asphalt, Inc. v. Lewis Welding & Engineering Corp.*, 323 F.Supp. 1300 (S.D. N.Y.1970), *aff'd*, 444 F.2d 372 (1971), *cert. denied*, 404 U.S. 939, 92 S.Ct. 272, 30 L.Ed.2d 252 (1971) (asphalt production system); *U.S. Fibres, Inc. v. Proctor & Schwartz, Inc.*, 358 F.Supp. 449 (E.D.Mich. 1972), *aff'd*, 509 F.2d 1043 (6th Cir.1975) (industrial resin duo-form and drying oven); *Cryogenic Equipment, Inc. v. Southern Nitrogen, Inc.*, 490 F.2d 696 (8th Cir.1974) (nitrogen liquification facility); *Potomac Electric Power Co. v. Westinghouse Electric Corp.*, 385 F.Supp. 572 (D.D.C.1974), *rev'd mem. and remanded*, 527 F.2d 853 (D.C.Cir.1975) (turbine generator); *America Electric Power Co. v. Westinghouse Electric Corp.*, 418 F.Supp. 435 (S.D.N.Y. 1976) (turbine generator); *Lincoln Pulp & Paper Co. v. Dravo Corp.*, 436 F.Supp. 262 (N.D.Me.1977) (chemical recovery boiler); *S.M. Wilson & Co. v. Smith International, Inc.*, 587 F.2d 1363 (9th Cir.1978) (tunnel boring equipment); *AES Technology Systems v. Coherent Radiation*, 583 F.2d 933 (7th Cir.1978) (argon laser); *Chatlos Systems, Inc. v. National Cash Register Corp.*, 635 F.2d 1081 (3rd Cir.1981) (computer program). *See also* Eddy, *The Metaphysics of U.C.C. Section 2–719(2)*, 65 Calif.L.Rev. at 76–84; Anderson, *Failure of Essential Purpose and Essential Failure on Purpose: A Look at Section 2–719 of the Uniform Commercial Code*, 31 S.W. L.J. 759, 777 (1977).

### III

We conclude that the jury was entitled to award damages to a farmer who lost his soybean crop because of a tractor that, despite all promises, was not repaired. We do not, however, paint in broad brush. We treat these points only in interpreting the litigated contract between Waters and Massey-Ferguson. We accordingly advance no general opinions about the enforceability of another warranty that does purport to exclude seller liability for consequential damages. As in so many other situations, sound advice may be found in the truism that "each case must stand on its own facts." *S.M. Wilson & Co. v. Smith International, Inc.*, 587 F.2d at 1376. On its facts, this award must stand.

The judgment of the district court is AFFIRMED.